UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

DR. AL-HAJJ IDRIS A. MUHAMMAD and
SIRAJ IBN WAHHAJ

            Plaintiffs Inpropria Persona Sui Juris,

    -against-                                              Civil Action
                                                            No. 05-1851

ROBERT C. BONNER, Commissioner, U.S. Customs,
and Border Protection; SUSAN MITCHELL, Director of        (Dearie, J)
Field Operations; THOMAS WILLIAMS, Supervisory          ( Bloom, M.J.)
Border Protection Officer; ROBERT FAGAN, U.S.
Immigration and Customs Enforcement Agent; BRYANT
WONG, U.S. Immigration and Customs Enforcement Agent;
TWO UNKNOWN BORDER PROTECTION OFFICERS,

            Defendants.

-------------------------------------------------------------------------x

STATE OF NEW YORK
COUNTY OF MANHATTAN

### AFFIRMATION OF DR. AL-HAJJ IDRIS A. MUHAMMAD

    I, Dr. Al-Hajj Idris A. Muhammad, make the following affirmation under the penalties of perjury.

    1. I am the Plaintiff Inpropria Persona Sui Juris, in the above entitled action and I am a United States citizen. I make this affirmation in opposition to Defendants' motion for summary judgment.

    2. On February 1, 2005, at approximately 3:15p.m., I arrived at John F. Kennedy ("JFK") international airport from Mecca, Saudi Arabia, on Egypt Air flight number 985.

3. I was arriving from Makkah, Saudi Arabia because I had just completed my holy pilgrimage, which is one of the five pillars of Al-Islam that all Muslims must fulfill. Al-Hajj is a blessed journey, a journey that is based on belief in Allah's Unity (Tawhid), sincerity to Him, responding to His call, and on obedience to His commands, hoping to gain the reward of the Almighty Allah, and in obedience to His Messenger Muhammad (May the Peace and Blessings be Upon Him).

4. As I embarked from the flight, I entered into a corridor that exits onto the general airport area. However, at the end of the corridor, I encountered two customs or border protection officers that were checking passenger passports. When an unknown border protection officer checked my passport, I was told to follow the officer to a room.

5. Upon entering the room, the agent told me to sit on a wooden bench. When I asked if I was being detained, the agent told me "yes" and that I would not be permitted to leave until my "investigation" was completed. At this point I believed that I was not permitted to leave the "detention" room.

6. After about one hour of sitting in the "detention" room, I asked to use the rest room, at which point an officer escorted me to the rest room. I believe that the officer might have also escorted me into the rest room.

7. After returning from the rest room, I spent another hour sitting on the wooden bench. Although I am aware that as a routine practice border protection does take people aside to check their luggage and/or passport, I thought that my detention, as the officer affirmed when I asked about my status, was rather unusual. I had done nothing wrong and was returning from the most spiritual experience of my life only to be met with harassment.

8. During the two hours that I spent in detention no one came to speak to me or explain why I was sitting in the room. However, I did notice that other passengers were coming in and out of the room with frequency. I can honestly say that not a single passenger that I saw on that day spent more than half and hour in the "detention" room.

9. Therefore, I stood up and vehemently protested what the agent had told me had been an investigation. I shouted that I either be arrested or let go and that any one who cared to investigate could call my attorney.

10. Surprisingly, the supervising border protection officer Thomas Williams came and told me that I was free to leave.

11. I honestly believe today, based on my experience, that of Mr. Wahhaj and others with whom I have spoken, that if had I not spoken up, I would have been left to sit in detention for as long as the officers wished. I would have been left to believe, as I did, that I was not allowed to leave.

12. Although I believed I was detained against my will, it was only because I noticed other people being released quickly that I said something. As the anti-terror alerts in the New York City subways say: "If you see something, say something." Well, I did and that's the only reason the government released me after two hours of detention.

13. I wonder now why I was made to believe I was not free to go and what was the "investigation" that the unknown border protection officer spoke about? I believe the investigation was phony and an attempt to violate my constitutional rights under the guise of it being lawful.

14. Even if there was a real investigation, I was never told why I was detained for two unnecessary hours. I honestly believe that I was held for no other reason other than because I am a Muslim Man of Arab ethnicity, my Way of Life which is Al-Islam and political belief.

15. If I had really done something wrong, then why was it so easy for me to be released after I began to oppose my detention. The above mentioned experience makes me believe that the stop was beyond routine and was selective without any probable cause to do so.

16. **WHEREFORE**, I respectfully request that the Court denies the Defendants motion for summary judgment as it is premature and without merit. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1427 Jumad-al-Awwal 8 – 2006 June 4, 2006
Manhattan, NY

Dr. Al-Hajj Idris A. Muhammad