UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DR. AL-HAJJ IDRIS A. MUHAMMAD
and SIRAJ IBN WAHHAJ,

                   Plaintiffs,

     -against-

ROBERT C. BONNER, et al.,

                   Defendants.
------------------------------------------------------X

**MEMORANDUM OF DECISION**

05 CV 1851 (RJD) (LB)

DEARIE, Chief Judge.

*Pro se* plaintiffs allege that defendants violated their civil rights by detaining them at John F. Kennedy International Airport. The Court referred defendants' motion for summary judgment, as well as plaintiffs' motion to amend their complaint, to Magistrate Judge Lois Bloom pursuant to 28 U.S.C. § 636(b)(1)(B). On March 16, 2007, Magistrate Judge Bloom issued a report, recommending that defendants' summary judgment motion be granted and that plaintiffs' request to amend be denied. Plaintiffs submitted objections on March 26, 2007. The Court returned the case to Magistrate Judge Bloom for limited discovery regarding the immediate circumstances of the airport detentions. On March 31, 2008, the Court adopted Magistrate Judge Bloom's report in light of the Second Circuit's decision in Tabaa v. Chertoff, 509 F.3d 89 (2d Cir. 2007). The Court takes the opportunity now to elaborate upon the relevance of that holding to this case.

The facts in Tabaa concerned "five U.S. citizens and practicing Muslims with no criminal records and of whom the government had no individualized suspicion of being associated with

1

terrorism [who] were . . . detained by [Customs and Border Protection ("CBP")] officials for several hours, questioned, patted-down, fingerprinted, and photographed." Id. at 92. Like plaintiffs in the instant matter, the Tabaa plaintiffs made First and Fourth Amendment claims, as well as claims under the Religious Freedom Restoration Act ("RFRA"). The Second Circuit upheld the district court's grant of summary judgment, finding: that the searches and detentions were "routine" and therefore not in violation of the Fourth Amendment, id. at 97-101; that defendants acted pursuant to a compelling government interest and could not have done so through means significantly less restrictive of plaintiff's associational freedoms, id. at 101-05; and that, for similar reasons, defendants had not violated plaintiff's free exercise rights under either RFRA or the First Amendment, id. at 105-07.

The facts of the instant case are summarized in Magistrate Judge Bloom's report. However, it is worth noting that in almost all respects, plaintiffs were subjected to actions that were clearly less burdensome than those at issue in Tabaa. Plaintiff Wahhaj was detained for approximately four hours, questioned briefly and had his luggage searched. Plaintiff Muhammad was not questioned, but was detained for two hours and had his luggage inspected. In Tabaa, the Second Circuit, though expressing understandable concern that the "combined effect of the various measures employed, including intrusive questioning, photographing, and fingerprinting," id. at 98, may have been stigmatizing, ultimately held that "[b]ecause the decisive factor in the analysis is invasiveness of privacy—not overall inconvenience—we find that CBP's searches of plaintiffs, considered in their entirety, were routine in the border context, albeit near the outer limits of what is permissible absent reasonable suspicion," id. at 99. In addition, the Court found that "[w]hile the searches here fall between these two poles, we believe they are more akin to the

one-hour delay in Flores-Montano than the overnight detention in Montoya de Hernandez" and therefore did not violate the Fourth Amendment. Id. at 100.

Furthermore, the Court notes the Tabaa Court's findings that the CBP's actions—which as noted above were more restrictive than those at issue here—presented only an "indirect burden on association," id. at 104, and that "given the compelling governmental interest at issue here (i.e., the prevention of potential terrorists from entering the United States), and the use of routine procedures by CBP to confirm the identities of people entering the United States, CBP's actions did not violate plaintiffs' rights, even under heightened scrutiny," id. at 106-07.[1]

Plaintiffs were no doubt inconvenienced by the CBP's actions and "it is not unreasonable for plaintiffs to have felt there was stigma attached to [their detentions]." Id. at 98. It is unfortunate that the current state of heightened security must necessarily result in some level of incommodity, yet this is undoubtedly the case. The Court simply expresses its hope that all those involved will exercise as much courtesy and cooperation as possible so as to minimize the inevitable strain and inconvenience.

SO ORDERED.

Dated: Brooklyn, New York
June 20, 2008

RAYMOND J. DEARIE
United States District Judge

---

[1] The Court also notes but does not rely upon the Second Circuit's statement that "some measure of deference is owed to CBP due to its considered expertise in carrying out its mission of protecting the border." Id. at 106.

3